UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| ALLSTATE INSURANCE COMPANY,<br><br>Plaintiff,<br><br>v.<br><br>JOHN C. JACKSON, an individual; JORDAN TAUTUA-JANTOC, an individual; TIMOTHY MILLER and LENA JANTOC, individually and the marital community comprised thereof; WILLIAM DUSSAULT as the Personal Representative of the ESTATE OF MICHAEL MILLER,<br><br>Defendants. | CASE NO. C09-1478RSM<br><br>ORDER ON MOTIONS FOR SUMMARY JUDGMENT |

This matter comes before the Court on Plaintiff Allstate Insurance Company's motion for summary judgment as well as Defendant William Dussault's motion for summary judgment. For the reasons set forth below, the Court denies Allstate's motion for summary judgment and grants Dussault's motion for summary judgment.

**I. FACTUAL BACKGROUND**

Allstate brought this action seeking a declaratory judgment that it has no duty to defend a complaint filed against John C. Jackson in Washington state court, and that it is not obligated to provide coverage for him for any liability arising out of that complaint. Allstate moved for summary judgment, to which William Dussault responded. Dussault, in turn, filed a motion for summary judgment, to which Allstate responded. Dussault is the plaintiff in the state court action which Jackson is defending.

The underlying facts giving rise to the state court lawsuit, and which are relevant for disposition

ORDER ON MOTIONS FOR SUMMARY JUDGMENT -- Page 1

in this case, are not in dispute. Because there are no material facts in dispute, the matter is ready for summary judgment disposition.

In September 2006, John Jackson, Jordan Tautua-Jantoc,[1] and Michael Miller were classmates at Evergreen High School, and teammates on the football team. Jackson owned a Jennings .380 firearm, and Jordan owned a Glock 9mm handgun. Both boys were 16 years old. In early September 2006, Jackson and Jordan were discussing guns at school and told each other about their respective guns. Jackson proposed a trade: he would give Jordan his gun and $100 for Jordan's more powerful Glock gun.

Jackson wanted to make the trade because he faced threats of violence at school and thus wanted a bigger gun to protect himself. Someone had previously pulled a gun on Jackson at school, and that person's gun had been much bigger than Jackson's. Jackson thought his gun was "really little" and wanted something more imposing. Jordan knew about these circumstances.

Either the same day that the boys discussed the trade, or a few days later, Jordan brought the Glock to school and executed the trade with Jackson in the school bathroom. On September 21, 2006, Jordan shot and killed his step-brother, Michael Miller, in their residence.

Jordan pled guilty to manslaughter. Dussault, who is the personal representative of the deceased, filed a Third Amended Complaint in state court which brings negligence claims against Jordan, Jackson, and other persons. Dussault's claim against Jackson is that Jackson was negligent because he participated in the illegal sale of firearms, and as a direct and proximate cause of that act, injury resulted for which Jackson is liable. The Third Amended Complaint does not allege that Jackson, in making the gun trade, acted maliciously, was motivated by an evil nature or a wrongful disposition, or maliciously intended to harm or injure anyone or anything.

## II. LEGAL ANALYSIS

**A. Standard of Review**

Summary judgment is proper where "the pleadings, depositions, answers to interrogatories, and

---

[1] This order refers to Jordan Tautua-Jantoc as "Jordan" because there is another person by the name of Tautua-Jantoc implicated in the Washington state trial to which the Court does not refer.

ORDER ON MOTIONS FOR SUMMARY JUDGMENT -- Page 2

admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). The Court must draw all reasonable inferences in favor of the non-moving party. *Farrakhan v. Gregoire*, 590 F.3d 989, 1014 (9th Cir. 2010). The moving party has the burden of demonstrating the absence of a genuine issue of material fact for trial. *See Anderson*, 477 U.S. at 257. Genuine factual issues are those for which the evidence is such that "a reasonable jury could return a verdict for the non-moving party." *Anderson*, 477 U.S. at 248. Material facts are those which might affect the outcome of the suit under governing law. *See id.* In ruling on summary judgment, a court does not weigh evidence to determine the truth of the matter, but "only determine[s] whether there is a genuine issue for trial." *Crane v. Conoco, Inc.*, 41 F.3d 547, 549 (9th Cir. 1994) (citation omitted).

The interpretation of an insurance policy is an issue of law. *Schwindt v. Underwriters at Lloyd's of London*, 81 Wn.App. 293, 298 (1996). "Courts interpret insurance contracts as an average insurance purchaser would understand them and give undefined terms in these contracts their 'plain, ordinary, and popular' meaning." *Allstate Ins. Co. v. Raynor*, 143 Wash. 2d 469, 476 (Wash. 2001) (citation omitted). The purpose of insurance is to insure, and "it has been almost the unanimous holding of all courts that insurance contracts must be liberally construed in favor of a . . . beneficiary thereof, whenever possible, and strictly construed against the insurer. . . ." *Queen City Farms, Inc. v. Cent'l Nat'l Ins. Co. of Omaha*, 64 Wash.App. 838, 855, 866 (Wash. Ct. App. 1992), *aff'd in part, rev'd in part*, 126 Wash. 2d 50 (Wash. 1994). This rule "applies with added force to exclusionary clauses which seek to limit policy coverage." *Raynor*, 143 Wash. 2d at 476 n.4. Whether there is a duty to defend is normally determined from the complaint itself in the underlying proceeding. *Holland Am. Ins. Co. v. National Indem. Co.*, 75 Wash. 2d 909, 911 (Wash. 1969).

**B. Whether Allstate's policy is implicated by "an occurrence" to which the policy applies.**

The parties do not dispute that Jackson is an "insured person" under the Allstate Indemnity Company Deluxe Plus Homeowners Policy, which is the only insurance policy in question. The relevant inclusionary clause of the policy reads as follows:

ORDER ON MOTIONS FOR SUMMARY JUDGMENT -- Page 3

**Coverage X**
**Family Liability Coverage**
*Losses We Cover Under Coverage X:*
Subject to the terms, conditions and limitations of this policy, **Allstate** will pay damages which an **insured person** becomes legally obligated to pay because of **bodily injury** or **property damage** arising from an **occurrence** to which this policy applies, and covered by this part of the policy.

**We** may investigate or settle any claim or suit for covered damages against an **insured person**. If an insured person is sued for these damages, **we** will provide a defense with counsel of **our** choice, even if the allegations are groundless, false or fraudulent. **We** are not obligated to pay any claim or judgment after **we** have exhausted **our** limit of liability.

The term "occurrence" is defined as follows:

> **"Occurrence"** – means an accident, including continuous or repeated exposure to substantially the same general harmful conditions during the policy period, resulting in **bodily injury** or **property damage**.

The term "accident" is not defined.

The first issue disputed by the parties is whether Jackson is covered under the inclusionary paragraph. Allstate contends that Jackson is not covered because his gun trade was an intentional act, and thus not an "accident." Dussault counters that Jackson is indeed being sued for an accident – the accidental or unforeseen shooting of Jordan's step-brother to which Jackson's gun trade was connected.

There is extensive Washington state case law interpreting the meaning of the word "accident" in insurance coverage disputes. A long line of cases was surveyed as early as 1946, in *Evans v. Metropolitan Life Ins. Co.*, 26 Wash.2d 594 (Wash. 1946), and more recently the Washington Supreme Court summarized the law yet again:

> Where, as here, the word "accident" is not otherwise defined in a policy, we look to our common law for definition. As summarized by Judge McInturff writing for the Court of Appeals in *Unigard Mut. Ins. Co. v. Spokane Sch. Dist. 81*, 20 Wash.App. 261, 263-64, 579 P.2d 1015 (1978),
>> In a long line of cases our courts have said that an accident is never present when a deliberate act is performed unless some additional unexpected, independent and unforeseen happening occurs which produces or brings about the result of injury or death.
> . . . .
>> There are many definitions of the word "accident." Judging from the plethora of

ORDER ON MOTIONS FOR SUMMARY JUDGMENT -- Page 4

> law on the subject, no one of them seems to be perfectly satisfactory to everyone. The definition of "accident" applied in the cases just discussed is founded on the elemental proposition that injuries will not be deemed caused by accident where the injuries are intentionally inflicted, this generally being considered a risk which it would be against public policy to insure. Thus, for example, the law will not countenance one intentionally shooting someone and then saying that since he or she did not intend to hurt the person shot, what happened was an "accident" covered by liability insurance.
>  . . . .

*Detweiler v. J.C. Penney Cas. Ins. Co.*, 110 Wash.2d 99, 104-05 (Wash. 1988).

In *Detweiler*, the claimant fired his gun at a moving vehicle driven by his antagonist and shrapnel from the bullets hit the vehicle's wheels and ricocheted back at the claimant. *Id.* at 101. The claimant thus suffered bodily injury from his own shooting of the gun and claimed insurance proceeds were due. The Washington Supreme Court held that although "the result of claimant's action (being struck by metal fragments in the neck, face and eye and sustaining injuries therefrom) was doubtless unintended, the means (shooting bullets from a gun at a nearby steel target) were obviously intended." *Id.* at 108. It was "thus arguable that claimant's injuries were a natural consequence of his actions and that no 'additional unexpected, independent and unforeseen happening' occurred to bring them about." *Id.* The court was unable to grant summary judgment, and remanded the case for a factual determination of the "variables inherent in this confused occurrence" in order to determine whether there had been an "accident." *Id.*

More recently, the Washington Supreme Court has clarified that on the question of whether something is an "occurrence," "an objective standard is inconsistent with insurance coverage for damage resulting from ordinary negligence." *Queen City Farms*, 126 Wash. 2d at 66. Appellate courts have further clarified the issue, holding that "[t]o prove that an intentional act was not an accident, the insurer must show that it was deliberate, meaning done with awareness of the implications or consequences of the act." *Nationwide Mut. Ins. Co. v. Hayles, Inc.*, 136 Wash.App. 531, 538 (Wash. Ct. App. 2007). "A negligent act also may constitute an 'occurrence,' as long as it results in unintended consequences." *Id.*

ORDER ON MOTIONS FOR SUMMARY JUDGMENT -- Page 5

Thus, when an insured and a friend intentionally set fire to some newspapers on the sidewalk, and the fire unexpectedly spread to and damaged nearby buildings, the incident was an "accident" because the court could not say that the insured and his friend knew or should have known that the fire would spread to the building. *State Farm Fire & Cas. Co. v. Ham & Rye, L.L.C.*, 142 Wash. App. 6, 17 (Wash. Ct. App. 2007).

Allstate is simply incorrect in stating that "[a]n intentional act can never be an accident." Dkt. #31, Motion for Summary Judgment, at 6. The precise linguistic formulations used to define "accidents" have varied from case to case, but it is clear that the term "accident" encompasses some intentional acts that result in unintended losses or consequences. *See*, *e.g.*, *Federated Am. Ins. Co. v. Strong*, 102 Wash.2d 665, 674 (Wash. 1984) ("A loss is 'accidental' when it happens without design, intent, or obvious motivation.") (quotation omitted); *Yakima Cement Prods. Co. v. Great Am. Ins. Co.*, 93 Wash.2d 210, 215 (Wash. 1980) (in a product liability case, an accident is "an unexpected, unforeseen, or undesigned happening or consequence from either a known or unknown cause") (quotation omitted). Moreover, in a case particularly notable to this Court, the Ninth Circuit has held that under Washington law, even when a person intentionally has sex with a second person, that intentional act can constitute an "accident" because in having intercourse, the first person did not know that the second person did not know the first person's true identity. *See Fischer v. State Farm Fire and Cas. Co.*, 272 Fed. Appx. 608 (9th Cir. 2008), *rev'g in part Fischer v. State Farm Fire and Cas. Co.*, 2006 WL 1148511 (W. D. Wash. Apr. 26, 2006) (NO. C05-1487RSM).

There is no genuine dispute that Jackson intentionally traded guns. There is, however, also no genuine dispute that from Jackson's perspective, Jordan's use of the Jennings gun in bringing about his step-brother's death was "some additional unexpected, independent and unforeseen happening . . . which produce[d] or [brought] about the result of injury or death." Jackson only intended to trade

ORDER ON MOTIONS FOR SUMMARY JUDGMENT -- Page 6

ownership and possession of guns, thereby increasing his own sense of prowess or safety.  There is simply no evidence that he "knew or should have known" that the gun trade would result in the death of Jordan's step-brother.  *See id.* at 539.

As this case involves an "accident" under Washington law, Jackson is thus covered under the inclusionary language in the Allstate policy.

**C. Whether coverage is excluded because the injury was "reasonably expected to result from intentional or criminal acts.**"

Allstate argues that even if Jackson is covered under the inclusionary language discussed above, he is excluded from coverage because the injury in question was the result of his intentional and criminal acts.  Dussault counters that Jackson never intended for Jordan's step-brother to get injured, and that his criminal act was not serious enough to trigger the insurance exclusion.

The relevant exclusionary language reads as follows:

**Losses We Do Not Cover Under Coverage X**:
1. **We** do not cover any **bodily injury** or **property damage** intended by, or which may reasonably be expected to result from the intentional or criminal acts or omissions of, any **insured person**. This exclusion applies even if:
a) such **bodily injury** or **property damage** is of a different kind or degree than that intended or reasonably expected; or
b) such **bodily injury** or **property damage** is sustained by a different person than that intended or reasonably expected.

Exclusions from insurance coverage "are contrary to the fundamental protective purpose of insurance and will not be extended beyond their clear and unequivocal meaning." *Stuart v. Am. States Ins. Co.*, 134 Wash. 2d 814, 818-19 (Wash. 1998).  Exclusionary clauses are construed strictly against the insurer. *Port of Seattle v. Lexington Ins. Co.*, 111 Wash. App. 901, 908 (Wash. Ct. App. 2002).

Regarding the exclusionary provision, the first issue is whether the death in question was "intended by . . . or . . . may reasonably be expected to result from the intentional . . . acts" of Jackson.

ORDER ON MOTIONS FOR SUMMARY JUDGMENT -- Page 7

It is clear that the death was not intended by Jackson. The "may reasonably be expected to result" language appears to pose an objective test, but Washington state law appears to require a subjective test in such circumstances. *See Queen City Farms*, 64 Wash. App. at 858-60. But under either a subjective or objective standard, "[t]he term 'expected' when used in association with 'intended' carries the connotation of a high degree of certainty or probability . . . thus being 'used . . . practically [to] equate with "intended". . . .'" *Id.* at 859 (citation omitted). Jackson did not subjectively expect that the death would occur. And objectively speaking, the Court cannot state, without more, that a death was to be the reasonably expected result of this gun trade.

The final issue is whether, in conducting the gun trade, Jackson engaged in criminal activity such that he is excluded from coverage. Allstate is correct that, under Washington law, Jackson appears to have engaged in a criminal act by transferring a gun to Jordan. *See* RCW 9.41.080. But "a criminal act exclusion does not apply to all acts technically classified as crimes, but only to serious criminal conduct 'done with malicious intent, from evil nature, or with a wrongful disposition to harm or injure other persons or property.'" *Allstate Ins. Co. v. Raynor*, 143 Wash. 2d 469, 477 (Wash. 2001) (citing *Van Riper v. Constitutional Government League*, 1 Wash.2d 635, 642 (Wash. 1939)). There is simply no evidence that Jackson traded Jordan the Jennings gun "with malicious intent, from evil nature, or with a wrongful disposition to harm or injure other persons or property." At most, he wished to protect himself from threats at school. This behavior does not rise to the level of serious criminal activity required to activate the exclusionary language.

The application of Washington law thus reveals that the exclusionary provisions of the insurance policy are no bar to Jackson's coverage.

### III. CONCLUSION

ORDER ON MOTIONS FOR SUMMARY JUDGMENT -- Page 8

The Court being fully advised and having considered William Dussault's Motion for Summary Judgment, Allstate's Motion for Summary Judgment, and the accompanying declarations in support thereof, it is hereby ORDERED that:

(1) William Dussault's Motion for Summary Judgment against Plaintiff is GRANTED. Allstate's Motion for Summary Judgment is DENIED.

(2) Judgment is to be entered in favor of Defendant William Dussualt declaring that Plaintiff Allstate is required to provide coverage for John C. Jackson for the claims against him in the King County Superior Court lawsuit of *William Dussault as the Personal Representative of the Estate of Michael Miller v. Tautua-Jantoc, et. al.*, Case No. 09-2-12910-0 SEA.

DATED this 6th day of May 2010.

*[signature]*

RICARDO S. MARTINEZ
UNITED STATES DISTRICT JUDGE

ORDER ON MOTIONS FOR SUMMARY JUDGMENT -- 9